I'm Richard Sagerbloom, attorney for Elena Rodriguez-Malfavon, the plaintiff appellate in this case. This is a First Amendment retaliation case based upon a public employee in Las Vegas, what they call a non-licensed administrator who worked for the Clark County School District. And she determined that her principal was audio and videotaping employees, students. That was what she thought was the case, right? Right. But let's get to the bottom of the line, if you will. The district court decided this case based upon the fifth ANG factor. Where in the record did you dispute the evidence that was put on by the district indicating that it would have terminated your client regardless of the protected speech? Well, first, if I could clarify that. They never said they would have terminated her regardless of her protected speech. That's not the way I read the record, but go ahead. So they did put in, the district put in some evidence that she would have been fired anyway. They said she had a prior unrelated unsatisfactory evaluation. She was given an oral warning and a second unsatisfactory evaluation. She wasn't a regular employee, so it was easy to fire her because the funds were not out of their budget and they were required to remove two administrators. So they submit that evidence. And the question is, what did you submit to create a genuine issue of material fact that but for her protected speech, she wouldn't have been fired? Well, first, Your Honor, she was not fired. Well, you're right. She was transferred from that position. Right. And the reason she was transferred, and actually there's a demotion from an administrator back to what's called classified service, was because she had two unsatisfactory evaluations in a row. So the focus is on the second evaluation, unsatisfactory evaluation, which is the one at issue here. And that unsatisfactory evaluation was based upon an oral warning, and that oral warning is what the district court concluded had been retaliatory. So if you go back in reverse, if the district court concludes the oral warning was retaliatory, how can then they say, well, we would have given her the unsatisfactory anyway? But, Counsel, with respect, I know it's kind of hard to focus on the one little point here, but my concern is this, as my colleague has just indicated, the district did indicate the status of your client from their perspective with the two warnings, indicated they would have had this, whatever you want to call it, transfer regardless. I don't find in the record evidence that she put on, whether she had it and whether it was in other places, I don't know. But I don't find in the record her refutation saying that's not true, that's pretext or whatever else. What am I missing? Where is it? All right. And I have to totally apologize for this, because going, preparing for this argument, I went back and looked at what we prepared as our record on appeal, excerpts of record. I understand. And the excerpts of record, we did not include the critical document, which is her affidavit submitted in response to summary judgment. And in that affidavit, which is in the record on appeal, paragraph 15 states. Where is it? What's the ER site or SER, whatever it is? Well, that's. What's the docket number? Because you said it wasn't in the record, so do you have a docket number so we can find it? I apologize. I don't have it. It's the opposition to summary judgment, the first exhibit attached to that opposition. Let me just ask you this. Here we are in our court of appeal. You don't put this in the record. Are we supposed to go back to the district court record ourselves and ferret around and try to find something to buttress your client's position, or is that your obligation? Your Honor, that's obviously my obligation. You asked the question. I just wanted to point out that it was. It is in the record, and she has refuted this. But truthfully, our argument down below was more on the timing, because the things that were used to justify the oral warning, which resulted in the unsatisfactory, which resulted in the devotion, all happened, things that had been going on for months. There was no e-mails to her, no counseling to her. Nothing happened. These all just came out of the blue once her supervisor was reprimanded because of this audio recording issue. He was reprimanded? Yes. I thought, correct me if I'm wrong, I thought that there was a determination that nothing was being recorded, no audio was being recorded. It was a video recording only, and it was for safety purposes. Is that wrong? That's they could not conclude that their audio recording had taken place, but there was a written summary of conference, which went into her file based upon that complaint. And that's what, the day after that was received, is when they started documenting this oral warning. So I think what Mr. Stein, I think you're talking about, what Stein said, he could not corroborate allegations that cameras were being used for audio taping. Correct. So was there anything actually resolving the issue, or just this non-corroboration statement? Non-corroboration. I mean, first off, she's surreptitiously videoing what's going on, that they did have audio capabilities, he just could not verify that she was actually taping it. But when people would come to my client and say, she just came out and said, you just said something, she obviously had been listening in her office to what was going on over these cameras. And the issue is very serious. Obviously, when you're doing this with teachers, you're doing it with parents, you're doing it with students. The counselors were the ones that were coming to my client and complaining, and they're involved in confidential information. So, I mean, it never was fully verified, but it was something that obviously humiliated the principal, and that's why the oral warning that my client received the next day started. And then there's like 30 pages showing how involved the whole district was in trying to come after my client over a couple of issues. But again, with respect, I get back to my original question. Under the fifth prong of Eng, if the district says we would have transferred her regardless of this protected speech, in your case you're talking about the claim on the part that was being audio recorded. Right. And you say there is something in the opposition to the summary judgment that refutes that that's what the district would have done? What does it say? Does it say the district, that's a pretext? Does it say the district never intended to do that? Yes. Because, again, this is all tied to this oral warning. Without the oral warning, there would not have been a negative evaluation. Well, you're attacking the oral warning, but did you say that it could not have done this because it didn't satisfy? The oral warning was not the second warning? Correct. Is that what you're saying? Correct. Again, I apologize. This is in the record. My client said, none of the items mentioned in the oral warning were ever brought to my attention until I received this document, this document being the oral warning. I was not present when the time clock procedure was presented. I was not responsible for the fire keys or shelter-in-place bins. I was not the only one who prepared the evaluation late. So she has specifically addressed each of the issues in the oral warning. Was that argued to the district court because the district court doesn't make reference to it? Again, it was in the record. I don't know that it was actually articulated in the opposition to summary judgment. I do agree that if it was not articulated to the district court, basically it's way we can't consider that. I think one of our colleagues wrote that judges are not like, what do you refer to us as, like mole rats or something, or burrow around in the record trying to find things to argue cases for clients. Well, I'm sure the district court judge would probably agree with you. I think you have the right to look, but obviously you don't have an obligation to look. Well, let's just say hypothetically if the district court didn't get anything refuting this, do you agree you've got a problem? No, I don't. And here's the other reason, because, again, we're looking at the oral warning as the basis for this whole chain. And in the oral warning, not only was it specific, the issues that had been going on for months that had never been raised, there's no e-mails, no documentation that they were ever an issue until the principal was reprimanded. But also in the e-mail chain in which they created this oral warning, the principal herself specifically referenced her warning, and in her warning that she received, her admonition, it said in item six, it says, do not retaliate against anyone because you've received this summary of conference. The principal circled that number, number six, and then in a specific item in an e-mail said, I want you to see what I just received, referring to the fact that she had been told not to retaliate. I'm just not sure what to infer from that, because then she, with the assistance of Ms. Juhasz, I think. Juhasz, right. Yeah, went ahead and gave the oral warning and the write-up for your client. And so it said we need to be careful and keep this in mind, because I've been told this by the supervisor, but obviously didn't think that what she was doing was retaliatory or she wouldn't have gone forward with it, or at least that's a reasonable inference to take. Well, or the reasonable inference could be that she felt it was retaliatory, but Ms. Juhasz didn't say anything and so she went forward. Remember, this is a summary judgment. You have to accept all the inferences in my favor. But why would she even put two and two together like that? But your client has the obligation to refute what the district said, and if she doesn't, then she's going to lose the summary judgment, right? Because as to the fifth prong of Ng, there would have been no material issue of fact if she didn't dispute it. Well, I analogize it to a Title VII case where you have a prima facie case, they come forward with their legitimate explanation, and then you have some type of a pretext, some type of a discriminatory statement, something else out there. You're right. Under a McDonnell analysis, if you can show pretext, that changes things. But my point is, at least I didn't see in the record where your client refuted the district's comments under the fifth prong of Ng, and so then I don't see a material issue of fact. That's why I asked you in the first place, where is it? And it's not in what you gave us here. You say it's in the docket in the district court record. I'm not sure quite what we do with that because the district judge didn't mention it. Well, again, I would just say that there's the fact that there is this reference to be careful, this looks like it's retaliation, which is something beyond. And then there's also the whole point of this oral warning, which is that if the oral warning was done in retaliation, then how can you turn around later and say, oh, we would have terminated it anyway? The only reason they gave her the oral warning was because of the retaliation. With respect, I think you're sort of mischaracterizing what was said about retaliation, but you're welcome to say it, of course, but I don't see the record that way. Yeah, well, again, that's how we looked at that. The fact that she had a guilty mind could be inferred. On that happy thought, do you want to save a little time? Yes, absolutely. I appreciate that. Thank you. Okay, very good. Let's hear from the school district. You don't have a guilty mind, I trust. I do not. Okay. Good morning. May it please the Court. My name is Ethan Thomas, and I'm here on behalf of the Clark County School District and the individual defendants, Edward Goldman and Anita Wilbur. As our briefing indicates, we believe the district court's order was correct and that this court should affirm the granting of summary judgment on this First Amendment retaliation claim. I think we did get to the issue that we're not really even talking about the reduction in force, the elimination of her position. All of those things really flow from this one event, although down below those were things that they were arguing were retaliatory in and of themselves, and those were obviously dismissed by the court. Counsel, can you address my question to your opposing counsel? It seemed to me that the district made its point under the fifth prong of ANG that this transfer would have occurred regardless of the alleged protected speech. Do you recall, does the record show, at least the record before us, show that that argument was at least put in conflict, that there was a material issue of fact about that point? It is not anywhere in the appellate record. I'm not aware of it anywhere in there. How about before the district court? There was an affidavit, and to be frank, I'm not even aware. I didn't look at that in my preparation today because it wasn't in the appellate record, but there was an affidavit. I don't dispute that there was an affidavit. But I think even if you look at the briefing, that was not the focus of what they were arguing was a genuine issue of material fact, and that's why the court said we don't have to dig through and try to find something for it. So the opposing counsel says this affidavit was attached to the opposition to summary judgment. So it wasn't hidden in the record. It was attached to the motion. And so the argument, as I understand it, is that the central basis that the district court gives as to why she would be fired anyway is because she had two unsatisfactory, or not fired, excuse me, transferred, adverse employment action. She had two unsatisfactory evaluations. And the argument is, but the second one was pretextual. That reason doesn't work because the second one was based on her protected speech and was retaliatory. And then their evidence for that is in the affidavit, where she says the second unsatisfactory evaluation is faceless and is solely because of retaliation for her complaints. If, in fact, the second unsatisfactory evaluation is, she creates a genuine issue of material fact as to whether that was itself retaliatory, does that undercut or eliminate the district's position that she would have been fired anyway? Well, I think the district's position is, it's a little bit complicated because below they were arguing that the elimination of the position, even the negotiation of the collective bargaining agreement and then the subsequent demotion that she received from that transfer, that all of those things were the subject of retaliation for these complaints. Now they're trying to parse it out and say, well, no, now it's just the oral warning and second unsat, unsatisfactory evaluation, which leads us to that conclusion. And so if we're just looking at it in that pace, essentially the school district's position was the elimination of the position, all of those things, there was no evidence that any of that was retaliatory, and there's nothing in the record to suggest it was, but also that the performance issues were genuine and that there is no genuine issue of material fact that the oral warning and the subsequent performance evaluation that Ms. Wilbur issued to her, there is no genuine issue of material fact. Just my question was, if the second unsatisfactory evaluation is not legitimate because there's a genuine issue of material fact as to whether it was retaliatory, did the district nevertheless prevent their, does the district nevertheless win on the fifth prong of Ng? Did it show a but for a reason even if the second unsatisfactory can't be considered? Well, no, I think it's based on the second unsatisfactory. That is the issue. Was that retaliatory or not? And so, but I think you have to look at, our argument obviously is that there is no genuine issue of material fact. I mean, they're citing to one paragraph, a conclusory paragraph from an affidavit essentially saying, well, I dispute that my performance is well, and that's essentially what they argue here, that no, she's going to testify that she was a good performer. Well, that isn't, that does not create a genuine issue of material fact. That's what I was going to ask you about because it seems to me that what my colleague read to you is a series of conclusory statements. There's no specifics in there. There's nothing that indicates why that is so. And just making a conclusory statement that it's retaliatory doesn't produce a material issue of fact, does it? No, it does not. And that is exactly our position on this issue, I think. I don't understand that. Can you explain that? I mean, in other words, if the, based on the timing, there is at least a material fact as to whether it was retaliatory, the action, and then the affidavit goes through each of the items in the oral warning and says none of those are legitimate complaints, so why doesn't that create a genuine issue of material fact as to whether the Unzass factory was legitimate or not? I think because there's undisputed evidence in the record to suggest that there were performance issues. And so there's evidence that Ms. Wilbur was talking with her superiors about concerns that she had about Ms. Malvevon. That's an undisputed fact and that that was occurring prior to Ms. Wilbur being called in for an investigatory or anything along those lines. There's evidence in the record, even in some of the plaintiff's complaints about other issues not related to the cameras, where she's confirming that she was having meetings with Ms. Wilbur where apparently Ms. Wilbur was expressing concerns. But if you focus on the second, Unzass, how many of those elements have to be disputed before you would have a genuine dispute of material fact? Because I thought you conceded earlier that if she didn't have the second one, she wouldn't have been reduced from administration to staff. That's true under the provisions of the... I just heard the affidavit for the first time myself, sorry. But I understood him to say, the affidavit says, I didn't have anything to do with key distribution or somebody else did. I wasn't there when they told me about punching in on the clock, so I didn't know about punching in on the clock. And those were two misconduct elements of the second unsatisfactory. Because the point is, if there's no second unsatisfactory, then she doesn't get reduced. Certainly. Well, I think you also have to look at what was the unsatisfactory. It is different from the oral warning. So this oral warning she receives, some of the negative issues that are noted in the performance review relate to some of those things that occurred. But the performance evaluation is Ms. Wilbur's perception of her performance throughout the entire year. And she has to state whether or not it's satisfactory or unsatisfactory. And if any of those issues... And here's why, A, B, C, D. Certainly. And a plaintiff says, well, A is not true, D is not true. Where do we get to the point where you have a genuine dispute of material facts? Well, I think you have to look at these conclusory things like, well, I disagree with that, with this rating about my performance. No, no, no. I wasn't there when they told me about punching the clock. So don't tell me I misbehaved by not punching in for two weeks. I didn't know I had to punch in. Right. I don't think all of the... I think even if you look at that affidavit, all those things are not in the record. All these specific disputes as to all the factual issues... Not in the affidavit? ...are not in the affidavit. I don't believe... Like I said, I didn't review the affidavit right before... I thought he was reading from it. There were some of the things were disputed in that affidavit. If that was before the district court, even if the district court didn't mention it, if the district judge didn't mention it, if it was before the district judge, would you say that might be error then to have given you summary judgment where there was that dispute as to material facts? I don't think so because I don't believe that some of those statements create a genuine issue of material fact. The other thing I want to point out is that... Why is that? I may agree with you, but why is that? Why is that? So if you look at the... One reason why is because if you look at the performance evaluation, there's all the different areas where you can check satisfactory, unsatisfactory. The checklist, of course, is nothing. It's just a check in the box. So what's important is what's on the continuation sheet where she gives her reasons, and those do focus on the elements that she disputes in the affidavit. Certainly. Those are certain things that she put in there. I think one of the other things you have to look at, though, is there's other evidence in the record that shows why this would not be genuine. Well, that just makes it a dispute, right? So in other words, if one of the reasons is the timesheets and her declaration says, I didn't know anything about timesheets, that's pretextual, we give effect to even self-serving declarations in a summary judgment context. So there has to be something more than that. Let's take the timesheets, for instance. So if it's in her affidavit that she says she knew nothing about the timesheets, there's an email in the record where she's writing on May 1st complaining about why she has to clock in on the timesheet issues, all of those things. That's in the record before the court when she emails Stein. That's one of the things she was complaining about with respect to Ms. Wilbur. So are you saying the evidence is so overwhelming that we should ignore her declaration or that the district court – that it wouldn't create a genuine issue of material fact? Is that – That's our position, and I think the fact that she had prior performance issue in the subsequent year by a separate person, but there were similar things noted about those issues also weighs in favor of showing that this is about performance and it's not about any alleged First Amendment-protected speech. What do we do – and this is just a hypothetical. Let's just say that her affidavit – well, let me go back. Let's say that the district's affidavit says there are ten things that she did wrong and the reason why we're going to transfer her. And in her responsive affidavit, she disputes three of them. What do we do with that? Is it still a material issue of disputed fact? Our position is that it would not be. There may be a dispute of fact, but that does not make it a genuine issue of material fact that determines whether or not her performance was good or not. And her own subjective feelings about her performance is not enough to create that issue of material fact. You're talking me out of it. If I'm the district judge, do I look at an affidavit like that and look at this performance and do I say to myself, you know, there's 25 factors here and only four of them weigh in her favor? On balance, she doesn't have a claim. Aren't I fact-finding if I do that? I don't think you're fact-finding, but you are weighing the sufficiency of whether or not there's a genuine issue of material fact. It feels like fact-finding. It feels like you're saying, well, there's so many things here, and these are four things she contests, but on balance, no reasonable jury would find her favorable. Well, who am I to do that? Well, that is part of determining whether or not an issue is genuine, right, is whether or not a reasonable jury would weigh in her favor. Where's the line there between it doesn't matter and it's a genuine dispute? Here with this affidavit. In this specific instance, I think you have to look at the totality of the circumstances. You have all the undisputed evidence that she had concerns about her performance earlier in the year. That wouldn't be tainted by any alleged retaliation or anything like that. You have evidence in the record that they had meetings together where they were clearly discussing issues relating to performance based on some of the complaints that Ms. Malfovone was making about her subsequently. You can tell it kind of lays out a timeline where there was meetings going on that spring where she was being talked about with respect to her performance and her job responsibilities. Are those reflected in the personnel record? Because the basis for the second unsatisfactory, I think, is this document from Wilbur, which seems to focus on the same issues that she counseled Ms. Rodriguez-Faldovanian in the oral session. That's correct. So the oral sets forth kind of a timeline of various meetings where she was discussing performance issues with her. And in Ms. Wilbur's deposition as well, she talks about some of those things that she was having issues and that she was trying to work with her superior, Mr. Stein, about how she can improve her performance, how they can go over her job responsibilities and all of those things. And so she clearly was, there's evidence to show that prior to a lot of these complaints coming up and before her ever being called into an investigatory conference that she was issuing things. I think one case that might be helpful is the Breeden case, which I know is a Title VII case. But that case talks about how when employers, employers don't have to stop going about punishing an employee or issuing performance evaluation about an employee simply because they engage in protected activity. And so that's the whole part of this. And that's the part that he's missed, that opposing counsel is missing with respect to this kind of independent source and that, well, if it's retaliatory, then it has, you know, then you can't find that it was issued. That's not what that fifth AIM factor is about. Can I ask one other question just to be sure I have the facts correct? Because I understood that there was a reduction in force by the district and that the issue here is that she got picked to be one of the people that was reduced because she had the second bad evaluation. Is that correct? That's correct. So there was, initially there was a budget reduction. The superintendent asked everyone to eliminate two positions in your division. Her position was eliminated in early May before these things happened. But that didn't mean she was going to be demoted or anything like that. It just meant that once they run the collective bargaining agreement provisions, then she'll wind up somewhere based on seniority or something along those lines. But the minute that she received that second unsatisfactory evaluation, her, and it wasn't just her, there was multiple people, and in the record there's an email where it shows there's two other people that were subject to that exact same provision. Because she received that second evaluation, then the provision was, well, those are the first people that get reduced in force. And there was essentially three of them. I thought the second person was a vacancy. So there was actually only her and a vacancy was eliminated. That was for the elimination of the position. And so it was. Goldman, the other defendant in this case, he eliminated her position because it was this new position that it came with funding, so it wasn't even really affecting their bottom line. But he also eliminated a position where no one was in. But what I'm talking about is after she was not the only person that got a second consecutive unsatisfactory evaluation during that reduction in force. And so the provision that allowed her to be reduced first was applied to more than just her. And so that's that. Any other questions for my colleague? No, thank you. All right. Thank you very much. Counsel, you have some rebuttal time. Thank you so much, Your Honors. And just real quickly, this is in the Record of Appeal. Extra to Record 63 is an e-mail from Ms. Juhasz to Principal Wilber. And she's telling Ms. Wilber how to write the unsatisfactory evaluation. And she says, put your oral argument, the oral warning you just gave my client, next to you and just copy essentially what you wrote in the oral argument on the unsatisfactory evaluation. What's wrong with that? Well, to say that the unsatisfactory evaluation was somehow based on factors other than what was in the oral argument is not true. The whole reason they gave the oral argument was so they could give the unsatisfactory evaluation, which they knew would then lead to her being demoted. They knew that at that point? Right. You mean the reduction in force determination had been made prior to the time that the second negative evaluation was given? Right. What's the dates? What's the time? It's all in this time frame. But this was going on. There were huge budget cuts in Las Vegas. So people knew, in particular the Associate Superintendent, who's the number two guy in the district, Goldman, the defendant in this case, was involved heavily in that whole process. Would you please give the court a 28-J letter, where the opposing counsel will tell us in the record where it shows that the school district had made a determination that there was going to be a reduction in force before the second negative evaluation was given to your client? That's important to me. Okay. Okay. All right. The other thing I just want to point out is, even though he keeps saying that there's all this stuff in the record, that my client had been warned about these issues, there was nothing. Her affidavit says, I was never told about these issues until after Principal Wilber was reprimanded for the videotaping. And there's no emails, no calendars, nothing from the contemporaneous with these issues, which had been around for months. So the fact that something happened in February, and then all of a sudden on April the 19th they decided to give her an oral warning, has to raise some suspicions, particularly because on April 18th is when Ms. Wilber received this summary of conference for allegedly videotaping. Counsel, any other questions for my colleague? Thank you. All right. Thank you, gentlemen, for your argument. We appreciate it. Thank you so much, Your Honor. The case just argued is submitted. And we will now hear argument in the last case of the morning, Fields v. Twitter.
judges: M. Smith, Ikuta, McAuliffe